BUTTON, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*January 13 — January 30, 1894.*

*Railroads: Injury to employee: Temporary employment: Evidence.*

1. In an action against a railway company for personal injuries, the plaintiff testified that defendant's train dispatcher, to whom he had applied for a position as brakeman, had told him he should have the next place that was open and that in the meantime he should assist the station agent at the station where he lived, as he had been doing before; that thereafter he did assist said agent by doing various things under his direction, and said agent gave him a switch-key so that he could open and close switches; that on the day of the accident the agent's regular assistant was absent, and the agent requested plaintiff to "help him out;" and that he was injured while riding to a switch for the purpose of closing it, which was a part of the work of the regular assistant. There was also testimony tending to show that the station agent had authority to employ a helper in the absence of any of the regular force. *Held*, sufficient to sustain a finding by the jury that the plaintiff was at the time in the employ of the defendant.

2. The error, if any, in admitting evidence of the conversation between plaintiff and defendant's train dispatcher, was immaterial.

APPEAL from the Circuit Court for *Rock* County.

This is an action to recover damages for a personal injury sustained by the plaintiff while helping the defendant's employees, temporarily, about the station at Milton Junction. The accident happened while the plaintiff was

standing upon the steps of a car in a moving train, by being brought in collision with a freight car standing on a side track near to the cross track upon which the train upon which plaintiff was, was moving. There was both a special and a general ·verdict. By the special verdict it was found (1) that the plaintiff was in the employ of the defendant at the time he was injured; (2) that the defendant was guilty of negligence; (3) that from the outer edge of the step on which the plaintiff stood to the northwest corner of the freight car with which he came in contact was a distance of nineteen inches; (4) that the plaintiff was in the exercise of ordinary care; (5) that his damages were the sum of $6,500. The general verdict found for the plaintiff in the same sum. There was a motion for a new trial, denied, and judgment for the plaintiff, from which the defendant appeals.

For the appellant there were briefs by *Jackson & Jackson*, attorneys, and *John T. Fish*, of counsel, and oral argument by *Mr. Fish* and *Mr. A. A. Jackson*.

For the respondent there was a brief by *Fethers, Jeffris & Fifield*, and oral argument by *Ogden H. Fethers* and *M. G. Jeffris*.

NEWMAN, J. The point most pressed on the argument was the defendant's contention that the evidence is not sufficient to sustain the finding that the plaintiff was in its employ at the time of his accident. The testimony bearing on that question was in some respects conflicting and contradictory. The plaintiff himself testified, in substance, that he had a desire to go railroading, as a passenger brakeman; that he had been to Milwaukee twice to see a Mr. Atkins — who was the defendant's train dispatcher, and who, as he had been informed by Mr. Soule, who was the defendant's station agent at Milton Junction, was the person who hired men for such service — upon the subject of being

Button vs. Chicago, Milwaukee & St. Paul R. Co.

hired as such brakeman; that Mr. Atkins told him that he should have the next place that was open; that in the meantime he should return to Milton Junction and do such work as he had been doing and as he could do to help Mr. Soule, and as soon as he could find a place for him he would send for him; that he returned to Milton Junction, and did assist Mr. Soule from time to time by doing, under his direction, various things, such as opening and closing switches, loading and unloading freight, baggage, and express, and such other things as he was told to do, up to the time of his accident; that Mr. Soule gave him a switch key, so that he could open and close switches; that, on the day of his accident, Mr. Regan, who was the telegraph operator, was absent; that it was a part of Regan's duty to assist generally about the station, in handling freight, baggage, and express, and in operating the switches; that on the morning of the day of his accident he went to the station at the time of the morning train, opened the switch for it, and worked about the station until 9 o'clock; that then, as he was going from the station towards his father's store, Mr. Soule said to him, "I suppose you will be back to help me out," and plaintiff replied that he would; that Mr. Soule had no other helper that day, but him; that on the same day he opened the switch for the way freight train, to let it in on the side track, helped to handle such freight as was to be handled, sealed the cars, and closed the switch after it had pulled out; that about 5 o'clock he went to the passenger train, helped to handle the baggage and express, and when the train pulled out he got upon it to go down to the switch, to close it; that he told Mr. Soule he would go down and close it, and thinks Mr. Soule responded "All right;" that this switch must be closed after the train had passed over it, in order to leave the main track open; that the closing of the switch was a part of Regan's work; that it was the usual way to ride down to the switch on the

train; that while he was riding upon the car, and before it had reached the switch, he was struck from the car, by being carried against the corner of a freight car which stood upon a side track very near to the cross-over track upon which the passenger train was moving; that he had seen the car standing there, but had not observed, particularly, its position; that he was standing upon the lower step of the baggage car with his back outward and towards the freight car, and was talking with another person; that the wheels of the car passed over his left wrist and severed his hand from his arm.

There was also testimony tending to prove that Mr. Soule, as the station agent, had authority to employ a helper whenever any of the usual force of employees about the station was absent. There was testimony on the part of the defendant to the contrary; and Mr. Soule denied, fully, that he had employed the defendant or requested his assistance.

It seems clear that this was a question for the jury, upon all the evidence. The jury were at liberty to believe the testimony of the plaintiff, if it convinced their minds. If the jury believed the plaintiff's testimony, they were justified in finding that he was in the employment of the defendant. This is fully settled by the case of *Johnson v. Ashland Water Co.* 71 Wis: 553, and the cases there cited. The evidence sustains the finding.

The questions of the negligence of the defendant and of the contributory negligence of the plaintiff seem to have been submitted fairly to the jury. The testimony relating to these questions did not leave it so free from doubt, nor the proper inference to be drawn from it so plain, as to warrant the court to direct a verdict for the defendant. The evidence is sufficient to sustain the verdict on both questions.

The admission in evidence of plaintiff's alleged conversa-

tion with Mr. Atkins, the defendant's train dispatcher, if error, was not an important error. The case does not go at all upon the theory that Mr. Atkins hired the plaintiff. Still, perhaps, that conversation might have some legitimate influence on the question of plaintiff's relation to defendant at the time of the accident. It might throw some light upon the causes which brought about the relation to the defendant in which he appeared upon the day of the accident, and so might have helped to show what the relation really was.

*By the Court.*— The judgment of the circuit court is affirmed.

Wᴇʟʟs, Fᴀʀɢᴏ & Cᴏᴍᴘᴀɴʏ, Respondent, vs. Wᴀʟsʜ, Appellant.

87   67
88  535

*January 13 — January 30, 1894.*

*Foreign will: Probate: How made effective as to lands in this state: Equity: Right of creditor to compel executor to have will allowed.*

1. A foreign will devising lands in this state to an executor in trust to pay debts. and the probate of such will in the state of the testator's domicile, have no effect upon the title to the lands in this state, and a creditor of the testator acquires thereby no lien upon or interest in such lands, until the will has been made effective by a compliance with our statutes. R. S. secs. 2295, 3790, 3793.

2. The creditor cannot, in such a case, maintain an action to compel the executor to have the will probated or allowed in this state, because he himself has the same right as the executor to procure such allowance.

APPEAL from the Circuit Court for *Jefferson* County. Action in equity, brought in the circuit court for Jefferson county. The complaint alleges the corporate character of plaintiff, and that the defendant is the widow of James Walsh, who died March 24, 1882, testate, in the state of